UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------

HARRY A. HARDER,

                 Plaintiff,

   -v-                                                               1:13-CV-565

NEW YORK STATE, OFFICE OF
CHILDREN & FAMILY SERVICES and
OTIS HILL,

                 Defendants.

------------------------------------

APPEARANCES:                                       OF COUNSEL:

HARRY A. HARDER
Plaintiff, Pro Se
P.O. Box 1133
Schenectady, NY 12301

HON. ERIC T. SCHNEIDERMAN           DAVID FRUCHTER, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

     Plaintiff Harry A. Harder ("Harder" or "plaintiff"), proceeding pro se, filed this action

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") against his former employer,

defendant New York State Office of Children & Family Services ("OCFS") and his former

co-worker, Otis Hill ("Hill").

The parties completed discovery and have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

"OCFS is a New York State agency that provides services for children, families, and other vulnerable populations." Chinnery v. N.Y.S. Office of Children & Family Servs., 2014 WL 1651950, at *1 (S.D.N.Y. Apr. 25, 2014) (Report & Recommendation), adopted by 2015 WL 1029601 (S.D.N.Y. Mar. 10, 2015).

On February 3, 2011, OCFS hired Harder as a Youth Division Aide-IV ("YDA"). Defs.' Statement of Material Facts, ECF No. 45-14, ¶¶ 1-2 ("Rule 7.1 Statement"). YDAs are responsible for supervising violent juvenile felony offenders housed in secure facilities around New York State. See Kaflowitz Decl., ECF No. 45-8, ¶ 4. Among other things, YDAs are expected to establish positive relationships with the youths assigned to their care and, when necessary, restrain individuals who become violent. Id. ¶ 8.

New OCFS employees, such as Harder, must attend a six-week basic training program at Parker Training Academy ("Parker Academy"). Kaflowitz Decl. ¶¶ 3, 9; Rule 7.1 Statement ¶ 3. Parker Academy provides dormitory-style housing facilities and new trainees

---

[1] Although Harder was the first to move for summary judgment, he failed to submit the Statement of Material Facts required by this District's Local Rules. See N.D.N.Y.L.R. 7.1(a)(3). More importantly, however, plaintiff also failed to respond to the Rule 7.1 Statement filed by defendants in support of their own motion, despite being properly warned of the consequences attendant with such a failure. See Defs.' Notice of Motion, ECF No. 45 (noting consequences as well as attaching this District's form notification of same). These procedural concerns aside, "[c]ourts have broad discretion in applying their local rules," Erie Painting & Maint., Inc. v. Ill. Union Ins. Co., 876 F. Supp. 2d 222, 224 (W.D.N.Y. 2012), and every effort has been made to identify possible factual disputes given the procedural posture and plaintiff's pro se status.

are apparently expected to share rooms during this six-week period.  See Rule 7.1 Statement ¶ 6.

On February 13, 2011, Harder arrived at Parker Academy where he met Hill, a fellow YDA trainee who had been assigned as his roommate for the duration of the training.  Rule 7.1 Statement ¶¶ 4-6; Kaflowitz Decl. ¶ 9.  Unfortunately, this roommate relationship quickly soured.  See Fruchter Decl., Ex. A, ECF No. 45-2, 32-35 ("Harder Dep.").  According to plaintiff, Hill directed a continuing series of derogatory, insulting, and sometimes sexually explicit comments toward him on a daily basis.  Id.

For instance, Harder claims he and Hill were playing cards with a group of other trainees in a lounge area when Hill used the words "papaya" and "sweet like lemonade or lemon . . . . [i]n connection to the opponents at the table; meaning myself and . . . another gentleman that were playing."  Harder Dep. at 60-61.  According to plaintiff, comments such as these—made both in his presence and outside his presence to others at Parker Academy—created the decidedly false impression that plaintiff was homosexual.[2]  Id. at 41; 81 ("Just for the record, I'm not gay.  And no matter how many words you used, it's never going to happen.").

On February 28, 2011, Harder asserts Hill made an unwanted sexual advance toward him during the evening.  Harder Dep. at 42-43.  According to plaintiff, he was lying in bed in his dormitory room when Hill, who was intoxicated at the time, entered the room and

---

[2] Although Harder claims Hill directed a litany of these derogatory comments toward him, plaintiff admitted in his deposition that only a few of these words were ever actually used in his presence.  Harder Dep. at 35-39, 86, 93.

- 3 -

whispered that "I have a pink towel, too." Id. at 42.[3] As a result of this and other incidents, plaintiff eventually complained to the administrative staff at Parker Academy. Id. at 69.

On March 2, 2011, the same day that Harder complained to administration about Hill, Alan Kaflowitz, Director of Parker Academy, held a meeting with Harder and Hill to address plaintiff's complaint. Rule 7.1 Statement ¶ 7; Harder Dep. at 69-70. Norman Tillery, a representative of Parker Academy's Human Resources staff, was also present for this meeting. Rule 7.1 Statement ¶ 7.

Both Tillery and Kaflowitz instructed Hill to refrain from any further comments that Harder might perceive to be derogatory. Kaflowitz Decl. ¶ 11. Hill apologized to plaintiff at this meeting. Id. Plaintiff and Hill were then assigned to different rooms for the remainder of their time at Parker Academy. Rule 7.1 Statement ¶ 8.

On March 25, 2011, both Harder and Hill graduated from Parker Academy and were assigned to work at Brookwood Secure Center ("Brookwood"), an OCFS-run residential center that provides housing, education, counseling, recreation, health, and dining services for violent youthful offenders. Rule 7.1 Statement ¶ 10; Kaflowitz Decl. ¶ 4; Harder Dep. at 73. According to plaintiff, Hill's unwanted comments continued and eventually caused staff and residents at Brookwood to become "uncomfortable" working with plaintiff. Harder Dep. at 73, 76, 98. Plaintiff further believes that these comments contributed to at least two violent encounters with facility residents. Id.

On October 1, 2011, Harder was on duty in Brookwood's lounge area when two residents began fighting. Harder Dep. at 99. Plaintiff and his fellow YDAs were required to

---

[3] Hill indicates that this comment "was a reference to the fact that when towels at [Parker Academy] which were originally white were laundered with items of other colors, the colors from some of the other items would run, and some of the formerly white towels would turn pink." Hill Decl., ECF No. 45-10, ¶ 6.

restrain the residents until order could be restored in the facility. Id. at 100. During the fight, plaintiff sustained an injury to his hand and received immediate treatment at a nearby hospital. Id. at 101-02. According to plaintiff, a supervisory official at Brookwood named John Rockafellow then denied his request to return to work in a "light duty" capacity following two days of medical leave. Id. at 102. Plaintiff "referred" this allegedly improper denial to a worker's compensation administrative law judge, who eventually concluded plaintiff had been improperly denied a light duty assignment.[4] Id. at 103-04.

On October 26, 2011, Harder returned to unrestricted duty at Brookwood. See Rule 7.1 Statement ¶ 9. According to plaintiff, Rockafellow then assigned him to "hard" or "more difficult" units at Brookwood, which consist of units where fights had recently broken out between residents. See Harder Dep. at 103-06 ("Everybody knows, if you go to that unit, there's a high chance that another fight may break out.").

On December 23, 2011, Harder was on duty in one of these "difficult units" when he was assaulted by a resident after directing him to secure his room. Harder Dep. at 113-14. According to plaintiff, he called for emergency assistance while struggling with this resident but other staff failed to arrive for approximately ten minutes.[5] Id. at 114-15. Plaintiff sustained injuries to his shoulder, head, and leg and again received emergency medical attention at a nearby hospital. Id. at 115-16. Plaintiff was placed on medical leave for approximately two months before returning to active duty at Brookwood. Id. at 116.

---

[4] Rockafellow contends he was not responsible for processing or deciding these "light duty" requests. Rockafellow Decl., ECF No. 45-11, ¶ 11.

[5] A security video submitted by defendants that purports to show this incident reveals that approximately seven staff members responded within a few minutes of the altercation.

Finally, on February 29, 2012, Harder claims Hill mentioned to other staff at Brookwood that he "wanted to take things to the parking lot." Harder Dep. at 84. According to plaintiff, this comment was made outside his presence but he became aware of it "because the whole facility was concerned about . . . a fight in the parking lot." Id. Supervisory officials apparently caught wind of this problem and held a meeting the very next day. Id. at 86. According to plaintiff, Hill again apologized for his comments and the parties shook hands. Id.

On March 6, 2012, Harder resigned from OCFS after accepting a promotional position at the Office of Parks, Recreation, and Historical Preservation ("Parks and Rec"), another New York State agency. Harder Dep. at 119-20. According to plaintiff, he remained at Parks and Rec for just over a year in a "provisional" capacity before agency cutbacks forced him out of that position. Id. at 122-24. Because plaintiff was uncomfortable returning to Brookwood, he then took a position with New York State's Department of Taxation and Finance. Id. at 128.

On August 24, 2012, Harder filed a complaint with the New York State Division of Human Rights ("DHR") against OCFS. Rule 7.1 Statement ¶ 13. Plaintiff's DHR complaint alleged that he had been subjected to unlawful discrimination as a result of staff and residents of Brookwood misperceiving him to be homosexual. Fruchter Decl., Ex. C, ECF No. 45-4,1-3 ("DHR Complaint"). DHR investigated plaintiff's allegations and ultimately dismissed plaintiff's DHR Complaint in a Determination and Order dated February 21, 2013. Fruchter Decl., Ex. E, ECF No. 45-6, 1-3.

On April 8, 2013, the Equal Opportunity Employment Commission ("EEOC") notified Harder that it had adopted the DHR's findings regarding plaintiff's DHR Complaint and notified plaintiff of his right to sue in federal court. Fruchter Decl., Ex. F, ECF No. 45-7, 1.

## III. **LEGAL STANDARD**

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. See id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also

Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation omitted).

Therefore, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A plaintiff's "[m]ere conclusory statements, conjecture or speculation" will not defeat summary judgment. Gross v. Nat'l Broad. Co., Inc., 232 F.Supp.2d 58, 67 (S.D.N.Y.2002); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir.2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Instead, a plaintiff must offer "concrete particulars." Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir.1999) (disregarding plaintiff's affidavit because it lacked "concrete particulars"); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

With this framework in mind, it bears noting that "direct evidence of . . . [discriminatory] intent will only rarely be available, so . . . 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb, 521 F.3d at 137 (internal citation omitted). However, this cautious attitude toward summary judgment in the employment discrimination context cannot excuse a court's obligation to "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Bickerstaff, 196 F.3d at 448.

Finally, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted). Application of this liberal standard is especially important where, as here, a plaintiff alleges violations of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)).

## IV. **DISCUSSION**

Harder brings Title VII discrimination and retaliation claims against Hill and OCFS, alleging that Hill's continued comments to staff and residents at Parker Academy and Brookwood created the false impression that plaintiff was homosexual. As a result, plaintiff asserts he endured unfair treatment and was eventually forced to seek a transfer to Parks and Rec.

### A. Defendants' Motion for Summary Judgment[6]

As an initial matter, Harder cannot sustain any of his Title VII claims directed at Hill, plaintiff's former co-worker and an individually named defendant in this action. Simply put, Title VII does not provide for individual liability. See, e.g., Jackson v. Battaglia, 63 F. Supp. 3d 214, 219 (N.D.N.Y. 2014).

#### 1. Title VII Discrimination

Harder's Title VII discrimination claims directed at OCFS fare no better. Plaintiff asserts he was subjected to a course of discriminatory treatment at OCFS as a result of a mis-perception regarding his sexual orientation that eventually forced him to seek a transfer to Parks and Rec. Liberally construed, plaintiff appears to bring claims for disparate treatment, a hostile work environment, and constructive discharge. See Harder Dep. at 85, 119.

A plaintiff seeking to press a Title VII discrimination claim based on disparate treatment must first establish a so-called prima facie case; that is, he must demonstrate that: (1) he is a member of a protected class; (2) who is qualified for the job he holds; (3) who suffered an adverse employment action; (4) under circumstances that give rise to an inference of discrimination. See Jackson, 63 F. Supp. 3d at 222.

But Harder cannot satisfy the first prong of this test, since Title VII "provides no remedy for discrimination based upon sexual orientation." Swift v. Countrywide Home Loans, Inc., 770 F. Supp. 2d 483, 488 (E.D.N.Y. 2011); see also McKibben v. Odd Fellows Health, Inc., 2014 WL 3701022, at *3 (D. Conn. July 25, 2014) (concluding same where plaintiff

---

[6] As noted above, Harder has also filed a motion for summary judgment. However, because defendants' motion will be granted, plaintiff's cross-motion must be denied.

alleged that "rumors around work were that she was gay" and claimed she was terminated "based on discriminatory animus against her based on her being perceived as gay").[7]

This same "protected class" limitation also applies to Title VII claims brought under theories of a hostile work environment and constructive discharge. Bakhit v. Safety Markings, Inc., 33 F. Supp. 3d 99, 107 (D. Conn. 2014) (applying limitation to constructive discharge claim under Title VII); Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 457 (S.D.N.Y. 2013) (applying limitation to hostile work environment claim under Title VII). Accordingly, defendants are entitled to judgment as a matter of law on these claims.

### 2. Title VII Retaliation

Harder's assertion of a Title VII retaliation claim bears closer scrutiny. Plaintiff alleges that Rockafellow, his supervisor at Brookwood, assigned him to more difficult or dangerous units after plaintiff complained to an administrative law judge about Rockafellow's failure to assign him light duty in October 2011 because of his perceived homosexuality.

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee who: "(1) has opposed an unlawful employment practice, or (2) has 'participated in any manner in an investigation under Title VII." Swift, 770 F. Supp. 2d at 489. Like Title VII's anti-discrimination provision, a plaintiff seeking to state a claim for retaliation must establish a prima facie case by demonstrating that he: (1) participated in protected activity known to the defendant; (2) a disadvantageous employment action occurred;

---

[7] To be sure, Title VII does permit a plaintiff to assert a claim for gender-based discrimination under a protected class of "individuals who fail or refuse to comply with socially accepted gender roles," but a careful review of the record in this case reveals that Harder is not attempting to press any such theory. McKibben, 2014 WL 3701022 at *3 (citation omitted)

and (3) there was a causal connection between the protected activity and the employment action about which the plaintiff complains. Id.

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Croons v. N.Y.S. Office of Mental Health, 18 F. Supp. 3d 193, 208 (N.D.N.Y. 2014) (quoting Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013)). "If the employer demonstrates a legitimate, non-discriminatory reason, then [t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." Id. (citation and internal quotation marks omitted).

### i. Protected Activity Known to OCFS[8]

"Protected activity for purposes of Title VII . . . retaliation claims encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turns out not to be unlawful, provided that the employee 'had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" Rodas v. Town of Farmington, 567 F. App'x 24, 26 (2d Cir. 2014) (summary order) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)). "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person." Id. (citation omitted).

---

[8] This prong also requires a plaintiff to establish the employer was aware of the protected activity. At this stage, Harder may rely on "general corporate knowledge" to establish his prima facie case. See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013). A review of the submissions suggests that Rockafellow's superiors were aware of plaintiff's complaint, and this ambiguity is resolved in plaintiff's favor.

Notably, the Second Circuit "has not yet ruled on the specific question of whether a plaintiff may, under Title VII, maintain a claim of retaliation based on adverse employment action resulting from his complaints about sexual-orientation discrimination." Giudice v. Red Robin Intern., Inc., 555 F. App'x 67, 68-69 (2d Cir. 2014) (summary order). However, given the overall tenor of his submissions in this case, Harder satisfies this prong of the test. In fact, plaintiff's later DHR complaint makes clear that he firmly believed Rockafellow's earlier denial of a light duty assignment resulted directly from "the rumors spread about [plaintiff] relative to [his] perceived sexual orientation." Fruchter Decl., Ex. C, ECF No. 45-4, ¶ 5. And viewed in the light most favorable to him, this complaint to the administrative law judge was made with a good faith, reasonable belief that plaintiff was opposing an employment practice made unlawful by Title VII—the discriminatory denial of light duty based on some animus associated with the false impression around OCFS that plaintiff was homosexual.

### ii. **Adverse Employment Action**

"Retaliatory behavior by an employer is not limited to that which alters a plaintiff's conditions of employment, but is broadly defined to include any employment action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Swfit, 770 F. Supp. 2d at 489 (citation and internal quotation marks omitted).

Harder also satisfies this prong of the test, albeit not without some difficulty. Plaintiff claims that, after he complained about Rockafellow's refusal to assign him light duty, Rockafellow assigned him to more difficult units at Brookwood.

First, however, it must be noted that Harder only appears to actually complain of a single instance of being assigned to an unfavorable unit—the December 23 assignment where he suffered another on-the-job injury after restraining a resident. This is important,

because the record indicates that the "more difficult" units were themselves a fluid concept: they changed on a day-to-day basis because they were located at the source of the most recent fight between residents. As plaintiff explained in his deposition, "[e]verybody knows . . . [where there has already been one fight,] there's a high chance that another fight may break out . . . . [and] most people didn't want to go" to whatever difficult unit that may currently be. Harder Dep. at 106.

That may well be the case, but the job of a YDA is to "diffuse [*sic*] violent situations involving resident youth, and physically restrain resident youth who are engaging in violent behavior." Rockafellow Decl. ¶ 5. Indeed, "[a]ll YDAs assigned to work at Brookwood receive hazard duty pay because of the nature of the population of youth that they deal with on a daily basis. Moreover, YDAs have sustained work-related injuries on all of the units at Brookwood." Id. ¶ 17.[9]

In other words, it would seem doubtful that the action Harder identifies—a one-off assignment to a unit where he was expected to perform the same general class of duties that he and other YDAs were expected to perform on a daily basis—constitutes a sufficiently adverse action to sustain a retaliation claim. Cf. Redd v. N.Y.S. Div. of Parole, 2010 WL 1177452, at *16 (E.D.N.Y. Mar. 2, 2010) (Report & Recommendation) (concluding involuntary reassignment to different precinct was insufficient to support this element where all employees were required to monitor individuals who had committed violent crimes and new assignment "was not necessarily more dangerous than any other"), adopted as modified on other grounds by 2010 WL 1177453 (E.D.N.Y. Mar. 24, 2010).

---

[9] Other courts to have considered Title VII claims by YDAs have specifically noted that the "security and safety" of the residents at these secure facilities is "of the utmost importance." Chinnery, 2014 WL 1651950, at *2.

However, "[c]ontext matters, as some actions may take on more or less significance depending on the context" in which the adverse action occurred. Tepperwien v. Entergy Nuclear Operations, 663 F.3d 556, 568 (2d Cir. 2011) (citation and internal quotation marks omitted).

As relevant here, Harder claims he had already been assigned to this unit the day before, when one of the residents "said he hated gay people and was going to cause harm." Harder Dep. at 54. Plaintiff claims that when Rockafellow attempted to assign him to that unit again on the day in question, plaintiff "mentioned to [Rockafellow], you know, we had a little problem yesterday, I'm not that comfortable with it." Id. at 111. Plaintiff further claims Lee Wynn, one of Rockafellow's superiors, had similarly "mentioned" to Rockafellow that he did not want plaintiff assigned to that particular unit. Id.

Bearing these additional facts in mind, Harder's assignment to the unit in question on December 23 is sufficient to satisfy the material adversity element of a prima facie case. McKinnon v. Gonzales, 642 F. Supp. 2d 410, 427 (D.N.J. 2009) (concluding "a factfinder could reasonably construe Plaintiff's transfer from Unit Six to the 'out of control' Unit Three . . . as materially adverse" for purposes of a Title VII retaliation claim).

### iii. Causal Connection

"Proof of causation can be shown . . . indirectly . . . through circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct or by showing that the protected activity was followed closely by the adverse employment action." Rumsey v. Northeast Health, Inc., –F. Supp. 3d–, 2015 WL 791794, at *14 (N.D.N.Y. Feb. 25, 2015) (Sannes, J.) (citing Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010)).

Harder satisfies this prong by virtue of the temporal proximity between his administrative complaint in October 2011 and his assignment to the more difficult unit on December 23, 2011. See Rumsey, 2015 WL 791794, at *15 ("For purposes of establishing a prima facie case of retaliation, two months is sufficient to show a causal connection between the protected activity and the adverse employment action." (citation and internal quotation marks omitted)).

### iv. **Legitimate, Non-Retaliatory Reason**

"Once a plaintiff establishes a *prima facie* case of retaliation, a presumption of retaliation arises and the defendant must articulate a legitimate reason for engaging in the adverse actions." Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 230 (E.D.N.Y. 2014). Importantly, "[t]his burden is one of production, not persuasion; it can involve no credibility assessment." Croons, 18 F. Supp. 3d at 203 (citation and internal quotation marks omitted).

OCFS has provided a straightforward reason for Harder's assignment to the so-called "difficult" unit on December 23: "unit assignments are often affected by staff availability." Rockafellow Decl. ¶ 18. In particular, defendants assert plaintiff was assigned to that unit "due to a limited availability of staff, and staffing needs with respect to other units." Id. ¶ 19. Rockafellow notes that "many other YDAs were assigned to this unit; including YDAs with similar levels of experience to the Plaintiff." Id. This is a legitimate reason for defendants' action.

### v. **Pretext**

"Under the McDonnell Douglas framework, if the defendant provides a non-retaliatory reason for the [adverse action], that reason overcomes the presumption of retaliation created

by the plaintiff's prima facie case." Rumsey, 2015 WL 791794 at *17. "The defendant is then entitled to summary judgment unless the plaintiff comes forward with evidence showing that the 'non-retaliatory reason is a mere pretext for retaliation,' and that the plaintiff's 'protected activity was a but-for cause of the alleged adverse employment action by the employer." Id. (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, –U.S.–, 133 S. Ct. 2517, 2534 (2013). "To show pretext and retaliatory motive, a plaintiff may rely on evidence comprising [his] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." Id. (citations and internal quotation marks omitted).

Undoubtedly, "the determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts." Joseph v. Owens & Minor Distrib., Inc., 5 F. Supp. 3d 295, 320 (E.D.N.Y. 2014) (quoting Kwan, 737 F.3d at 846 n. 5)). But even viewing the record evidence in the light most favorable to Harder, there are no disputed facts from which a reasonable factfinder could conclude that defendants reassigned plaintiff to the unit in question in retaliation for his light duty complaint.

First, although the temporal proximity between Harder's complaint about not receiving light duty and his reassignment to the difficult unit may have sufficed for purposes of establishing a prima facie case, "temporal proximity alone is not enough to establish pretext in this Circuit." Abrams, 764 F.3d 244, 254.

Second, the fact that a violent juvenile offender made a threatening comment in Harder's presence while he was on duty at Brookwood the day before, which he later "mentioned" to officials at OCFS, does not somehow establish that plaintiff's reassignment to

- 17 -

that unit the next day was retaliation for earlier protected activity. As noted before, context matters when undertaking this sort of inquiry. To that end, assigning a security official whose job duties consist of supervising violent youths to a unit where a resident made a threatening statement to that same security official the day before cannot, absent additional circumstantial evidence far beyond what has been presented here, establish a triable issue of fact as to a Title VII retaliation claim.

Finally, although Harder suggests that other YDAs were slow to arrive to help the day he was injured, his written report does not indicate any such concerns and the video submitted by defendants would seem to belie his claim. Rockafellow Decl., Ex. C, ECF No. 45-11, 21. Even assuming otherwise for purposes of this motion, plaintiff has offered nothing, and the record reveals nothing, to connect a lethargic response by other YDAs to any retaliatory animus attributable to them, to staff at OCFS generally, or to Rockafellow himself.

In fact, the record indicates that YDAs of similar experience to Harder were occasionally assigned to more difficult units, such as the one in question here, based on changing staffing needs. Beyond the fact that he was assigned to the same unit during a two-day period in December, plaintiff provides no evidence to show he was somehow repeatedly singled out for assignment to these sorts of units or that he had not been previously assigned to units where fights had recently broken out. Further, plaintiff conceded there were no further problems at Brookwood with unit assignments up until he resigned for the promotional opportunity at Parks and Rec. Harder Dep. at 118.

Finally, Harder's other claims of retaliation must also fail. For instance, plaintiff suggests that Rockafellow's initial failure to assign him light duty was also "retaliation," but

there is no indication of any "protected activity" to which this action may have been taken in response.  To the extent plaintiff believes there is a causal connection between his March 2011 complaint to supervisors at Parker Academy and Rockafellow's October 2011 denial of a light duty assignment at Brookwood, the temporal relationship between these two events is far too attenuated to sustain a retaliation claim.  Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012) ("In the context of retaliation, even a span of four months alone is insufficient to support an inference of causation.").

Likewise, given that Harder's DHR complaint was not filed until August 24, 2012, well after the events occurred at OCFS, this protected activity cannot be the causal basis for any of the retaliatory acts described by plaintiff.  See Croons, 18 F. Supp. 3d at 208 (finding no causal connection where the adverse employment action occurred before plaintiff filed a DHR complaint).

## V. CONCLUSION

Harder's assertions of discrimination based on the false impression of homosexuality fostered by Hill's comments do not bring him within the ambit of one of Title VII's protected classes.  Likewise, even assuming plaintiff's unit reassignment is a sufficiently adverse action for purposes of a retaliation claim, there is insufficient evidence from which a rational factfinder could conclude this assignment would not have occurred but for some retaliatory animus attributable to defendants.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's motion for summary judgment is DENIED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 3, 2015
Utica, New York.